(No. 75-CC-0076-

ALLEN HURST, JR., Claimant, *v.* THE STATE OF ILLINOIS,
Respondent.

*Order filed February 22, 1983.*

JEROLD GOLDENHERSH, for Claimant.

NEIL HARTIGAN, Attorney General (SUE MUELLER, Assistant Attorney General, of counsel), for Respondent.

ROE, C.J.

This cause having come for consideration on the joint stipulation of the Claimant and the Respondent and this Court being duly advised in the premises;

Finds, that this case was filed on or about July 18, 1974. The cause was continued generally by this Court pending the disposition of a matter in the St. Clair County Circuit Court. That action was dismissed on a motion for summary judgment which was allowed on August 3, 1978.

Briefly, the facts of this matter which are supported by exhibits attached to the joint stipulation are that several months prior to the date of the accident which occurred on August 20, 1972, the State hired a contractor to make an excavation near the northern boundary of Frank Holten State Park near the intersection of Lake Drive and 71st Street in the city of Centreville. In May 1972, a subcontractor of Hellrung Construction Company, A.J. Davinroy, d/b/a Davinroy Plumbing and Heating Company, pursuant to a contract with the Illinois Department of General Services, excavated a ditch approximately 20 feet long, 8 or 9 feet wide, and approximately 7 feet deep. Photographs of this ditch were at-

tached to the joint stipulation as Exhibit No. 1. The excavation was approximately 10 feet from the southern edge of Lake Drive. On the day of the excavation, and for several days thereafter, residents living near the site of the excavation physically prevented the contractor from completing the excavation and placement of plumbing pipes and lines. The Illinois State Police and the Illinois Park Rangers came to the scene, and work was halted without the excavation being filled. The State highway maintenance department was contacted the same day, and State-owned barricades with reflecting lights were placed at the excavation by State workers. Davinroy did not perform any subsequent work on the excavation during May or June of 1972. On June 19, 1972, Davinroy wrote a letter to the office of the supervisory architect for the State of Illinois informing him that work had been stopped on the excavation due to the obstruction caused by the area residents. This letter was attached to the joint stipulation as Exhibit No. 2. Probably, this work was terminated in later May 1972 by the State of Illinois. The subcontractor, Davinroy, was uncertain as to the last day work was performed, but in any event, the State of Illinois agreed to halt efforts to complete the project in December 1972. Mr. Davinroy's affidavit and deposition concerning the work performed is attached to the joint stipulation as Exhibit No. 3.

The Claimant in this matter, Allen Hurst, Jr., gave a discovery deposition concerning this matter for the circuit court case, and a copy was attached to the joint stipulation as Exhibit No. 4. Briefly, the Claimant indicated that on August 20, 1972, he was returning to his wife's residence at 7116 Park Avenue which was a short distance from the intersection of Lake Drive and 71st Street. Mr. Hurst had observed the excavation at this intersection about five times before the incident. The excavation had barricades, with reflectors only, the first time he saw

it in June 1972. On the evening of August 20, 1972, Mr. Hurst went to Blackburn's Taven, arriving at approximately 8:30 p.m. Mr. Hurst had three beers at the tavern. He is a large man. He had not had anything else to drink during that day and was not intoxicated. At approximately 10:00 p.m., Mr. Hurst caught a ride with a man from the tavern who took him to the intersection of Lake Drive and 71st Street. Mr. Hurst cannot recall this man's name and has never been able to identify or locate him. This acquaintance approached the intersection at 71st Street and pulled his vehicle off the road onto the shoulder. The area was not illuminated. Mr. Hurst got out of the vehicle, turned to ask the man how much he owed him for the ride, and fell directly into the excavation. The acquaintance aided Mr. Hurst and took him from the hole to his wife's residence. Mrs. Hurst then took Mr. Hurst to St. Mary's Hospital in East St. Louis. At the time of this accident, there were no barricades around the excavation.

Mr. Hurst's medical records are attached to the joint stipulation. Mr. Hurst was admitted and hospitalized with a diagnosis of fracture of left hip, greater trochanter. He was treated by Dr. Samuel S. Ezenwa. Mr. Hurst was hospitalized for 17 days, incurring charges of $1,196.80. Dr. Ezenwa's services were in the amount of $220.00. Mr. Hurst was released to go back to work in mid-January 1973, and he returned to work immediately. Prior to the occurrence, Mr. Hurst was employed by General Steel Industries, Inc., in Madison County, Illinois, as a fork-lift operator. He earned $3.49 per hour and worked 40 hours per week. He was off work from August 18, 1972, through January 16, 1973, for a period of 21 weeks. Mr. Hurst's total lost wages were $2,927.40. A verification statement concerning the wages lost was attached to the joint stipulation as Exhibit No. 6. Mr. Hurst continued to work at General Steel until the plant closed a few months

after his return in 1973.

Mr. Hurst has recovered well, although he still feels fatigue in his left hip after a few days of work, and he has difficulty in running. There is some susceptibility to re-injury in this area. Mr. Hurst's total special damages are $4,344.20. Mr. Hurst, at the time of his injury, endured considerable pain and suffering.

The Respondent has conceded liability for the Claimant's injuries to the extent agreed in the joint stipulation. Mr. Hurst has set his damages at the amount of four times the specials or $17,376.80. No other evidence, either oral or written, was presented to the Court and both parties waived briefs. Both parties also agreed that this award would constitute full and final satisfaction of the claim herein or any other claim arising from this same occurrence.

While the Court is not necessarily bound by a stipulation such as this, it has no desire to interpose a controversy where none appears to exist. The stipulation submitted by the parties appears to have been entered into freely and fairly, and its contents appear to be reasonable. The Court, therefore, finds no reason not to accept it.

It is hereby ordered, that Claimant be awarded the amount of $17,376.80 in full and final satisfaction of this instant claim.